O'Neill v. Manget.

---

JOHN O'NEILL, Appellant, v. FRED MANGET, Respondent.

St. Louis Court of Appeals, March 24, 1891.

Landlord and Tenant : EVICTION. If a landlord wrongfully disturbs the tenant's enjoyment of the demised premises for the purpose for which the same were let, the tenant may abandon the premises and thereby absolve himself from the further payment of the rent.

*Appeal from the St. Louis City Circuit Court.*—Hon. James E. Withrow, Judge.

Affirmed.

*T. J. Rowe*, for appellant.

The evidence offered by plaintiff did not prove that the plaintiff wrongfully entered and expelled the defendant, or that there was some deliberate disturbance of defendant's possession by plaintiff, whereby he was deprived of the beneficial enjoyment of the demised premises.    Taylor on Landlord & Tenant, secs. 307–318 ; *Gray v. Gaff*, 8 Mo. App. 329 ; *Smith v. Thurston*, 19 Mo. App. 58 ; *Jackson v. Eddy*, 12 Mo. 212 ; *Ogilvie v. Hull*, 5 Hill, 54 ; *Royce v. Guggenheim*, 106 Mass. 201.

*W. C. Marshall*, for respondent.

Rombauer, P. J.—This is a suit for rent.    The defense is eviction.    At the close of the plaintiff's evidence the court instructed the jury to find for the defendant, and the propriety of this instruction is the only question presented by this appeal.

The plaintiff let to the defendant a space, four feet in width by ten feet in length, immediately adjoining a window known as 1119 Poplar street, for the purpose of carrying on the railroad ticket business exclusively, the defendant to have the right to use said window, and the first brick column to the east of the window, for the purpose of advertising said ticket business to be carried on at said number.    The defendant went into possession, and put on the window in gilt letters, " 1119 Poplar street.    Fred. Manget, Association Railway Ticket Broker."    Some time afterwards he removed his place of business to 1117 Poplar street, which is an adjoining locality, and, when so doing, he put up a notice painted on white calico, which covered the lower

O'Neill v. Manget.

half of the window, stating that he had removed from 1119 to 1117 Poplar street. The building at that time was unoccupied. The plaintiff tore this sign down when the building became occupied, informing the defendant that other tenants objected to it. The defendant then put a white calico sheet over the entire window with the words, "Fred. Manget, ticket broker," painted on it, and this the plaintiff likewise tore down, and sent word to defendant that if he put up another sign on the window he would be subject to personal violence. The defendant thereupon vacated the premises entirely and ceased to pay rent, claiming that the plaintiff's act was tantamount to an eviction. This gave rise to the present action.

The space rented to the defendant was part of a hotel office, but there was no evidence in the case, that the white muslin sheet placed over the window materially interfered with the use of other parts of the room than those let to the defendant. The room had other windows and glass doors. Nor was there any evidence to what extent the muslin shut out the light through the window over which it was placed. The original gilt-letter sign remained on the window and is still there. All these facts appeared by the plaintiff's evidence.

It was held in *Jackson v. Eddy*, 12 Mo. 212, that "the consideration of the lessee's undertaking to pay rent is the quiet, peaceable and indisputable ( undisturbed ? ) possession of the premises leased, and is, in its nature, a condition precedent to the payment of rent. If the lessor by any wrongful act disturbs that possession which he should protect and defend, he thereby forfeits his right, and the lessee may abandon the possession of the premises leased, and thereby exonerate himself from liability to pay rent." In *Gray v. Gaff*, 8 Mo. App. 329, the defendant had rented the rear of certain premises for a stable, their front part being occupied at the time partly as a storeroom and partly

as a shop.   The plaintiff subsequently let the front part of the premises for a restaurant, against the protest of the defendant, who claimed that such use was injurious to his horses.   The use becoming injurious to the defendant's horses, and the plaintiff declining to interfere for the defendant's protection, the latter vacated the stable and refused to pay rent.   The court held that the landlord's conduct was in no sense an eviction, or a breach of the covenant of quiet enjoyment, and that the defendant was liable for the rent.   In course of the opinion Judge BAKEWELL said that it may be doubted whether *Jackson v. Eddy* would now be followed by the supreme court of the state.   The cases, however, are easily reconciled.   In the case of *Jackson v. Eddy*, the interference was by the landlord's direct act, while, in *Gray v. Gaff*, it was an interference by one tenant with another, this court expressly deciding that the letting of the premises for use as a restaurant, and their use as such was not necessarily injurious to the defendant, but that the injury was the result of the manner in which they were used.

In the case at bar the plaintiff had let to the defendant the window for the purpose of advertising his ticket business.   The mode of use was not defined in the lease, and included any use which was not unusual, and did not materially interfere with the convenient use of other parts of the same premises by the plaintiff or his other tenants.   There was no evidence in the case that the use made of the window did so interfere, or that it was not a proper and usual mode of using a window for advertising purposes. . If this is so, and the plaintiff did violently interfere with the defendant's use of the window for the purposes for which it was let to him, then the defendant, under the authority of *Jackson v. Eddy*, was justified in abandoning the possession of the premises, and thereby exonerating himself from the further payment of rent.

Judgment affirmed.   All the judges concur.