McBride, judge,
delivered the opinion of the courts
John F. Darby, assignee in bankruptcy of John J. Ahder'son, who sues to the use Of John B-. Camden, brought- his action in assumpsit hi the circuit court of St. Louis county, against the defendant, Louis A¿ Benoist. The declaration contained the Common counts for goodá,wares and merchandise, Sold by the bankrupt previous to his bankruptcy. The bill of particulars contains the itenis of the plaintiff’s demand,- and may be designated aS account A, for $1504 83, and account B, for $226 64.
The defendant pleaded the general iááúe’, with notice of Special matter, under the statute then in force. The first special defence wasjoayment. 2. That Anderson was declared a bankrupt; that Darby wáS appointed assignee and Thomas WatSCh was appointed commissioner in bankruptcy for St. Louis county, and that Anderson was indebted to' the defendant and one Hackney in the sum of $10,000. That the defendant appeared before the commissioner, and the plaintiff also appeared, and the defendant introduced evidence showing the indebtedness of Anderson to Benoist & Hackney in the sum of $10,000 and at that tiitie all the indebtedness in the hill of items was allowed as an offset and credit then due and owing from Anderson to Benoist and Hackney; all which was done, with the consent of Anderson,- Í)arby, Háckney and the commissioner. That after allowing all the claims of Anderson, he*Anderson, was still indebted in the sum of $10,000.
At the trial before the court sitting as a jury the plaintiff read the deposition of Jahies P. Thompson who testified that account A was bought for Benoist by his brother-in-law, and that account B was bought by Mrs. Benoist, that he believed that at the time of the sale Benoist knew of Anderson’s embarrassed condition, and that he purchased the goods to save all he could for himself, and that Benoist knew of Ander* son’s intention to assign, and that he intended to obtain a preference over Anderson’s other creditors.
It wa^s admitted that Darby was the assignee, duly qualified.
The plaintiff then offered the transcript of the proceedings in bank-* ruptcy of Anderson, to which the defendant objected, because the clerk’s certificate did not show that it was a full and complete transcript of all the -proceedings in the case of J. H. Mudge and others in *201 bankruptcy against John J. Anderson, and also of John J. Anderson in bankruptcy. The clerk’s certificate reads, “ the above and foregoing is a true copy of the records in my office” and the facts afterwards elicited showed that it was not a complete and full transcript. The court overruled the objection and the defendant excepted.
The petition of the creditors state that Anderson on the 11th day of May 1842 committed an act of bankruptcy by making a fraudulent assignment. The petition was filed the 20th of June 1842. On the 14th September 1842, Anderson was declared a bankrupt by the district court of the United States, and John F. Darby was appointed assignee on the 2d September 1844. The court ordered the assignee to sell all the choses in action of the bankrupt Anderson of which the claim in suit was one. The report of the assignee of the sale of the choses in action here referred to does not appear in the record of the proceedings of the district court although such report was made.
The plaintiffs then introduced the bankrupt Anderson who testified that the defendant met him in the street in the spring of 1842 and asked him if he would let Mr. Reilly (Benoist’s brother-in-law) have goods and credit the amount on his indebtedness to Benoist and Hackney. He agreed to the proposition. Mrs. Benoist also got goods at the same time. Mr. Reilly bought goods amounting to $1504 83 on the 9th May 1842. This was before Anderson’s assignment which was made on 11th May 1842. He owed Benoist & Co. more than $20,000. No goods were sold on the 12th May. He supposed and thought that Benoist knew of the embarrassed condition of his affairs. He settled with him and the amount was credited upon his notes and account, and he still remains indebted to Benoist & Co. This is my receipt:
St. Louis May 11, 1842.
Received from Louis A. Benoist fifteen hundred and four dollars in full for bill of goods purchased by James M. Reilly for account of L. A. Benoist & Co. from John Anderson & Co. JOHN J. ANDERSON.
The amount we settled the day after the sale. He gave me up one or two notes and I gave him a new one for the balance. On the 10th May he consulted counsel as to the propriety of making an assignment. On the next day the assignment was made and the store closed. That prior to his assignment) and at the time thereof he was insolvent. In December or January prior thereto, he made a deed of trust to some real estate to secure the defendant in a specific debt.
The plaintiff next introduced T. J. Bacon who testified that it was his opinion that in May 1842, and for some time previous, Anderson was *202 insolvent. Defendant was absent from St. Louis part of the winter and spring. His opinion of Anderson’s condition was founded upon many circumstances such as his borrowing money at usurious interest drawing kiteing bills &c. Defendant was a banker and broker, and Anderson dealt extensively with him and bought many bills of him.
The plaintiff here closed his case. The defendant then asked the court to declare that upon the evidence offered by the plaintiff he was not entitled to recover, which the court refused and defendant excepted.
The defendant offered in evidence the transcript of the allowance of claims of L. A. Benoist & Co. against the estate of John J. Anderson, by Watson the commissioner in bankruptcy for St. Louis county. The commissioner allowed upon one note $2905 50, upon another $2890 86, upon another $2283 23, with a credit of $717 17, making in all the sum of $7372 82; also the sum of $179 31 on an account current presented by the defendant against said estate—this account contains a credit for $227 48, the defendant’s account with Anderson for goods furnished his wife, also a credit for $38 50, the amount of Hackney’s individual account. It was admitted before the commissioner, that Anderson had paid Benoist & Co. interest, at the rate of one and a half per cent, per month.
Defendant then introduced Charles Sanguinette who testified that he called upon Anderson to send in his bill to defendant for settlement; that Anderson was largely indebied to Benoist & Co.; that the goods were to be credited on Anderson’s indebtedness. Benoist asked Anderson for certain goods and said that he would send Reilly to pick them out, for Mrs. Benoist. He got a memorandum from Mrs. Benoist and Reilly selected the goods. The bill A for $226 was for Mrs. Benoist. The goods bought by Reilly, bill B, $1504 83 were on account of Benoist & Co., a firm then composed of L. A. Benoist and Aaron H. Hackney.
Defendant next introduced Peter N. Ham who testified that he was present at the settlementvof Anderson and defendant—the memorandum is in his hand-writing as follows :
Account of J. J. Anderson, Note No. 8272, $2884 51
Rec’d on acc’t of J. Charless & Co. note $554 58
Bill of James M. Reilly, 1504
J. J. Anderson, note for balance, 825 93
$2884 51
The receipt of J. J. Anderson for $1504 is in witness’ hand-writing. The account was settled by giving up old notes and taking a new one *203 for the balance. The settlement was on the 11th May 1842. B. and H. both had private accounts with A. at the date of the settlement. B. had just returned from Havannah where he had spent the winter and spring—thinks it was known to the whole community that A.’s condition was critical. It was hard to tell who was good. B. had to ask an extension.
Defendant then offered to introduce John B. Camden as a witness, when plaintiff’s attorney objected, as Mr. C. was unwilling to testify, which objection the court sustained and defendant excepted.
John F. Darby was next introduced by defendant and testified that he sold the choses in action of Anderson in obedience to the order of the district court, and J. B. Camden bought the claim, upon which this suit is brought; the sale was prior to the commencement of the action. Anderson was embarrassed before the institution of proceedings against him in bankruptcy; he knew it and supposes every person there knew it. About noon 11th May 1842 he called at Anderson’s store and found it closed, then called at his house, when he told witness he had made an assignment.
Benoist & Co. and Geo. Collier both had to ask an extension at the time.
Defendant then closed and asked the court to instruct the jury as follows:
1st. The court instructs the jury that upon the evidence offered by the plaintiff he is not entitled to recover.
2d. The court also instructs the jury that the plaintiff having brought his action of assumpsit, it is a ratification of the indebtedness between the parties, and if the bankrupt was indebted to the defendant in a sum greater than the debt of the defendant to the bankrupt, it may be set off against the claim of the assignee.
3d. If the jury believe from the evidence that at the date of the sale of the goods by the bankrupt Anderson to the defendant, that Anderson was indebted to the defendant in a sum greater than the amount claimed in this suit, they will find for the defendant.
4th. The defendant also moves the court to exclude the transcript of the proceedings in bankruptcy in the matters of Anderson as the same is not a full and complete record of all proceedings in said case.
5th. The district court in bankruptcy having ordered the sale of the choses in action belonging to the bankrupt Anderson, if the account sued upon was one of the choses ordered to be sold, then the action is wrongfully brought by Darby and the plaintiff is not entitled to recover.
*204 6th. If the debt sued for was contracted more than two years before the bringing of this suit, the plaintiff is barred by the statute of limitations and cannot recover.
7th. If the sum of $227 48, part of the account sued for, was allowed as a credit before the commissioner in bankruptcy, the plaintiff in this suit is barred from claiming that amount.
All of which the court refused, and the defendant excepted.
The plaintiff then asked the following instruction :
1st. The plaintiff moves the court to declare the law to be and so to decide, that if the defendant or the firm of which he was a member, purchased goods of John J. Anderson before his bankruptcy, with a knowledge that the said Anderson was insolvent and with a view to obtain a preference over the other creditors of said Anderson, and if said Anderson sold the said goods, knowing that he was then insolvent, and with a view to give a preference to the defendant or the firm of which he was a member, overthe other creditors of said Anderson, and if said sale was made on the 9th and 11th May 1842, and a petition was filed against said Anderson by his creditors in the district court of the United States for the district of Missouri on the-day of June 1842, for the purpose of causing him to be declared a bankrupt by said court, upon the said petition, then the said sale was a fraud on the bankrupt law, and is void.
2d. That even though the account in controversy was sold by the assignee in bankruptcy of John J. Anderson, and purchased by John B. Camden, before the institution of this suit, this suit is properly brought in the name of the said assignee Darby, to the use of said Camden.
3d. That upon the facts as herein, the defendant is not entitled to set off the demands óf L. A. Benoist & Co. upon John J. Anderson against the plaintiff’s demand.
4th. That as to the goods purchased by defendant’s wife of John J. Anderson, the defendant cannot set off against the same, the indebtedness of Anderson to the firm of L. A. Benoist & Co.
5th. That the defendant cannot set off in this action any demand due from Anderson the bankrupt before his bankruptcy to the firm of L. A. Benoist fy Co., provided the sale was made by Anderson to said defendant or to said firm in contemplation of bankruptcy and with a view to give a preference to the defendant or his said firm over the other creditors of said bankrupt.
6th. That if said Anderson sold the defendant merchandize to the value of $226 on the 11th May 1842 knowing at the time he was in *205 solvent, and if the defendant was also aware at the date of said purchase that Anderson was insolvent, and if the said purchase was made by defendant and the said sale was made by said Anderson with a view to give the defendant a preference over the other creditors of said Anderson, and if the said Anderson was not then indebted to the defendant nor became so before he was decreed a bankrupt, and if said Anderson was afterwards decreed a bankrupt in due form and the plaintiff Darby was appointed and qualified as his assignee in bankruptcy, then, the plaintiff is entitled to recover notwithstanding, that said Anderson at the date of said purchase was indebted to the firm of L. A. Benoist & Co. in a sum exceeding the amount of said purchase.
7th. That the defendant having filed no plea of the statute of limitations nor set up any such defence in the pleadings cannot now rely upon the same as a defence to this action.
8th. That if the firm of L. A. Benoist & Co. in proving their claims against the estate of said bankrupt, before Thomas Watson, the commissioner in bankruptcy voluntarily entered upon their account a credit for the amount of the bill of goods purchased by the defendant of said bankrupt prior to his bankruptcy, the entering of such credit and the allowance thereof by said commissioner is no bar to the plaintiff’s recovery. <
Which the court gave and the defendant excepted.
The court thereupon found a verdict for the plaintiff for the amount claimed by him with interest thereon.
The defendant filed a motion for a new trial, assigning the usual reasons, which was refused and he excepted and has brought the case here by appeal.
In the introduction of evidence, the plaintiff offered to read a transcript from the records of the district court of Missouri to which the defendant objected, because the certificate of the clerk was not conclusive that the record offered, contained a full, true and perfect transcript of all the proceedings had in that court on the subject therein contained. The transcript was offered to prove that John J. Anderson had been declared a bankrupt, and that John F. Darby had been appointed his trustee, facts which had been admitted by the pleadings in the cause and therefore unnecessary to be proven. There was therefore no error committed on this point.
The next objection taken by the defendant, was to the evidence of Bacon, who testified as to the public and his own opinion of Anderson’s pecuniary condition. Under the general rule governing evidence, this *206 would not, perhaps, be admissible ; but this general rule, like all others, is subject to exceptions, and we concur in the correctness of the exception laid down by the supreme court of Louisiana in the case of Brander vs. Feraday, 16 Low. R. 296, and recognized as law by Mr. Greenleaf in his treatise on evidence Vol. 1, page 168, and which we think embraces the questions under consideration. The court say that « where particular knowledge of a fact is sought to be brought home to a party, evidence of the general reputation and belief of the existence of that fact among his neighbors is admissible to the jury as tending to show that he also had knowledge as well as they.” It is next to impossibility in very many cases to fix a positive knowledge of a fact upon an individual, notwithstanding the interest he may have in being correctly informed, and doubtless is informed thereof, and we cannot see the injustice of permitting a party to raise a presumption of knowledge in such a case by showing that the community are informed on the subject, and hence the party interested may also have similar knowledge.
The next exception is to the ruling- of the court, on the defendant’s application to have John B. Camden, sworn as a witness. It is a recognized and well settled rule of the common law, that actual and real parties to the suit, whether they are named on the record as such or not, are not compellable to give evidence against themselves, either in civil or in criminal cases. 1 Greenl. Ev. 401, sec, 330, where it is remarked that whatever may be said by theorists, as to the policy of the maxim Nemo tenetur seipsum prodere, no inconvenience has been felt in its practical application. On the contrary, after centuries of experience, it is still applauded by judges as a rule founded in good sense and sound policy, and it certainly preserves the party from temptation to perjury, &c. Then by the common law the defendant was not entitled to the evidence of Mr. Camden, who is the real party in- the action, nor had he taken the necessary steps under our statute (R. C. p. 818, sec. 12 and fob) to entitle him to call on the plaintiff to testify.
The next question is, was the action rightfully brought in the name of the assignee of the bankrupt ? By the provisions of the third section of the bankrupt law, it is declared “ that all the property and rights of property of every name and nature, and whether real, personal or mixed, of every bankrupt, &c., shall by mere operation of law, ipso facto, from the time of such decree, be deemed to be vested out of such bankrupt, without any other act, assignment or other conveyance whatsoever,, and the same shall be vested by force of the same decree, in such assignee as from time to time shall be appointed by the *207 proper court for this purpose, &c., and the assignee so appointed shall be vested with all the rights, titles, powers and authority to sell, manage and dispose of the same, and to sue for and defend the same, See., as fully to all intents and purposes as if the same was vested' in, or might be exercised by such bankrupt before or at the time of his bankruptcy declared as aforesaid.” Here then is a full substitution of the assignee to all the rights of the bankrupt. The act does not control the estate of the bankrupt further than to transfer it to the assignee in whose hands it is subject to the same legal rules as though it remained in the bankrupt. If, therefore, the bankrupt could not transfer or assign his choses in action so as to give the purchaser the right of suing in his own name to recover the same, neither can the assignee; and most clearly the bankrupt could not do this. We conclude, therefore, that the action was properly brought in the name of Darby, the assignee, in whom was the legal title by operation of law, to the use of John B. Camden, who by his purchase had acquired the equitable right to whatever might be recovered in the action.
The defendant not having pleaded the statute of limitation, by a plea to the declaration, nor given notice under the general issue, that he. would set up the statute in defence to the action, cannot entitle himself to its provisions by asking an instruction of the court; therefore the court properly refused the instruction on that point.
Nor can he defend himself on the ground that he voluntarily gave a 'Credit on his account exhibited against the bankrupt before the commissioner, if the purchase was made by him with a knowledge of Anderson’s insolvency, to obtain thereby a preference over the other creditors.
The second section of the bankrupt act provides “ that all future payments, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser, surety or other person, any preference or priority over the general creditors of such bankrupts, and all other payments, securities, conveyances or transfers -of property, or agreements made or given by such bankrupt in contemplation of bankruptcy to any person or persons whatever, not being a bona fide creditor or purchaser, for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act, and the assignee under the bankruptcy shall be entitled to claim, sue for, recover and receive the same as part of the assets of the bankruptcy, &c.
To permit one creditor to come in and thus obtain a set-off for the *208 entire amount of his indebtedness to the bankrupt, would be giving him an advantage over the other creditors who, under the fifth, section of the act, would only be entitled to receive a pro rata distribution of the bankrupt’s estate in discharge of their demands against him.
It remains to examine the principle contained in the second instruction asked by the defendant, and refused by the court, and involves the plaintiff’s right to a recovery in an action of assumpsit. The case of Smith vs. Hodson 4 T. R. 211, is a leading case on this question and appears to be decisive of the point. The statement of the case is, if a bankrupt on the eve of his bankruptcy fraudulently delivers goods to one of his creditors, the assignees may disaffirm the contract and recover the value of the goods in trover; but if they bring assumpsit, they affirm the contract, and then the creditor may set off his debt.
In commenting on the case, Lord Kenyon C. J., says it is expressly stated in the case that the goods in question were delivered by the bankrupts to the defendant with a view to defraud the rest of the creditors, and therefore an action might have been framed to disaffirm the contract, which was tinctured with fraud, for if the assignees had brought an action of trover, they might have recovered the value of the goods. And again, “ but this is an action on the contract, for the goods sold by the bankrupt, and although the assignees may either affirm or disaffirm the contract of the bankrupt, yet if they do affirm it they must act consistently throughout; they cannot, as has often been observed in cases of this kind, blow hot and cold, and as the assignees in this case .treated this transaction as a contract of sale, it must bejpursued through all its consequences, one of which is, that the party buying may set up the same defence to an action brought by the assignees, which he might have used, against the bankrupt himself, and consequently may set off another debt which was owing from the bankrupt to him.” See also 2 Str. 859, 1 Atk. 128, 7 East 164, 9 B. & C. 59, 1 T. R. 378, 7 R. & C. 310.
If, then, the bringing of this action of assumpsit by the assignee is an affirmance of the contract between the bankrupt Anderson and the defendant Benoist, as above held, the consequence is that the plaintiff cannot recover, for the contract was that the amount of the goods obtained from' Anderson was tobe credited on the defendant’s account against Anderson. This account greatly exceeded the amount of the goods purchased.
The circuit court therefore erred in refusing to give the second of the *209 defendant’s instructions, and its judgment should therefore be reversed.
And judge-Scott concurring, the judgment is .reversed and the causé ■remanded.