FRENCH, Appellant, v. PETTINGILL, Respondent.

St. Louis Court of Appeals, December 17, 1907.

**LANDLORD AND TENANT:** Eviction: Constructive Eviction: Annoyance of Adjoining Tenant. A tenant cannot claim constructive eviction from his leasehold on account of disorders permitted by another tenant upon a portion of the premises, where the landlord did not authorize or consent to the wrongful acts of the other tenant, and no complaint was made of such disorders by the tenant asserting an eviction.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds*, Judge.

REVERSED AND REMANDED.

*Stern & Haberman* for appellant.

(1) The act of adjoining tenant under the same landlord, not the result of the landlord's connivance, does not amount to a constructive eviction. Gray v. Gaff, 8 Mo. App. 329; Dimmock v. Daily, 9 Mo. App. 356; Witte v. Quinn, 38 Mo. App. 691; O'Neill v. Manget, 44 Mo. App. 279; 11 Am. and Eng. Ency. Law (2 Ed.), p. 474; Talbott v. English, 59 N. E. (Ind.) 857; Gilhooley v. Washington, 4 N. Y. 217; Cougle v. Densmore, 57 Ill.

App. 591; Bristol v. Pegram, 98 N. Y. 512, 49 Misc. 535; Lieferman v. Osten, 167 Ill. 93, 39 L. R. A. 158; Shawmut v. Boston, 118 Mass. 128; Seabord v. Fuller, 67 N. Y. 147, 33 Misc. 109. (2) The act of the landlord must be an intentional one to constitute an eviction. 18 Am. and Eng. Ency. of Law (2 Ed.), 298; 11 Am. and Eng. Ency. of Law (2 Ed.), 471; Barrett v. Boodie, 42 N. E. 144, 158 Ill. 479; Demmick v. Elkdahl, 102 Ill. App. 199; Kissler v. Wilson, 77 Ill. App. 141; Townsend v. Gilsey, 1 Sweeney (N. Y. Sup.) 155. (3) Remaining in possession after the acts alleged to constitute a constructive eviction is a waiver of the right to repudiate the letting and an election to perform the covenants of the lease. 11 Am. and Eng. Ency. of Law (2 Ed.), 480; Crommelin v. Thiess, 31 Ala. 412.

*Forest P. Tralles* for respondent.

(1) "The consideration of the lessee's undertaking to pay rent is the quiet, peaceable and indisputable possession of the premises leased and is in its nature a condition precedent to the payment of rent. If the lessor by any wrongful act disturbs that possession which he should protect and defend, he thereby forfeits his right, and the lessor may abandon the possession of the premises leased, and thereby exonerates himself from liability to pay rent." Jackson v. Eddy, 12 Mo. 209; Lay v. Bennett, 4 Colo. App. 252; Dougherty v. Seymour, 16 Cole 289. (2) The common landlord cannot control the independent, lawful acts of his tenants; hence constructive eviction cannot be predicated of such acts in which the landlord does not participate (Gray v. Gaff, 8 Mo. App. 329), but the landlord can control the wrongful immoral or unlawful acts of his tenants and when such acts disturb the quiet enjoyment of other of his tenants and the landlord fails to remedy such conditions he makes the unlawful act his own and a tenant so injured may abandon possession and defend in an action

for rent on the ground of constructive eviction.  Dyett v. Pendleton, 8 Cowen 727; Edgerton v. Page, 20 N. Y. 281.

GOODE, J.—This action was instituted to recover rent alleged to be due under a written lease.  So far as the record advises us the terms of the contract were that defendant leased the premises for two years from October 1, 1904 at a monthly rental of $55, payable in advance.  The lessor was the Majorie Realty Company and the lessee was the defendant.  Plaintiff French became the owner of the premises and the landlord, March 15, 1905.  The leasehold was a suite of rooms in an apartment house in the city of St. Louis on the northwest corner of Olive street and Newstead avenue.  The building is known as the "Alexandria" and is a large structure with a frontage of more than a hundred feet on Olive street and running back northwardly 150 feet along the west line of Newstead.  It is three stories high and was constructed for occupancy by many tenants.  The first or ground floor, on Olive street, was fitted up for storerooms and there was a bowling alley in the basement near the Olive street front and extending across the building.  The bowling alley was without windows or openings except a door reached by a stairway which descended from the west store room on Olive and another door near Newstead avenue, connected with the portion of the basement, which was used as a cafe.  The cafe rooms in the basement were entered only from Newstead avenue about one hundred feet north of Olive.  The cafe was therefore far toward the rear of the basement and about 175 feet distant from the entrance to defendant's third-story apartment.  The noise of bowling in the basement annoyed defendant and disturbed her slumber to some  extent; but she  testified she was disturbed too by the street cars along Olive street and could not say her loss of sleep was due exclusively to the bowling.  Meals and liquors of various kinds were served in the

cafe and from the first there was a bar in it. A club
known as the Alexandria Club had its quarters in the
building, and began to meet there about January 1, 1905.
The relation of this club to the cafe is not clearly set out
by the testimony, but the indications are the club
and cafe occupied the same rooms, and in the sum-
mer of 1905, the club finally absorbed the cafe; that is
to say, during and after said season, no one who was not
a member of the club would be served in the cafe. De-
fendant testified she took meals in the cafe herself
on two or three occasions; that the guests appeared to
be perfectly respectable and she saw nothing improper.
But the evidence tends to show that in the summer
of 1905 and thereafter, drunkenness and disorderly con-
duct were sometimes observed among the members of
the club in the cafe apartments. Intoxicated men, wom-
en and youths were seen to leave the building and heard
to use indecorous language. They would remain until
late hours after night and were more or less boisterous.
This happened, too, on Sunday afternoons. Sometimes
singing, laughing, hilarious talking and even fighting
were heard inside the clubrooms. There is no proof of
lewd conduct about the premises, and it is not asserted
any conduct of that sort took place. On October
15, 1905, defendant ceased to occupy her apartments in
the Alexandria building for lodging purposes, but con-
tinued to give music lessons in them. It should be stated
she was a maiden lady who gave instructions in mu-
sic. On January 15, 1906, she vacated her apartments
entirely, having rented others in a building known as
the Musical Arts Building, a block or two away, which
was specially arranged for the use of instructors in mu-
sic. Defendant paid her rent to the date she vacated,
but her apartments remained unoccupied thereafter un-
til April 1st, when they were let for $40 a month, credit
given defendant for the rent of the half month ending
April 15th, and the present action begun to recover the

balance of the rent from January 15th. The defense is such disturbance of defendant's use and quiet enjoyment of her apartments as amounted to a constructive eviction. To support this supposed eviction, defendant relies on the noise of the bowling in the basement and on the manner in which the cafe and club were conducted, which, she says, brought the building into bad repute, affected her own reputation and had a tendency to prevent her pupils, who were young girls, from coming to her studio. The testimony of the defendant proved the bowling noises were not the cause of her abandoning the leasehold, and the court refused to submit the evidence regarding this annoyance to the jury as tending to establish a defense. The jury were instructed to find a verdict for plaintiff for the rent demanded, unless they found plaintiff had rented part of the Alexandria Building for use as a cafe or "club," and that said cafe and club were conducted in such a manner that boisterous and disorderly characters congregated there at night and loud and profane talking occurred about the club, and these things disturbed the peace and quiet enjoyment of the defendant, or substantially injured the reputation of the building, and that plaintiff, or his agents, had knowledge of such conditions and because of them, defendant surrendered possession of her apartments on January 15, 1906.

In a previous case we declined to attempt to frame a rule of general application by which to determine what amounts to the constructive eviction of a tenant. [Delmar Inv. Co. v. Blumenfeld, 118 Mo. App. 308, 94 S. W. 823.] The decisions dealing with the subject are cautious about stating broadly when an eviction may occur in consequence of acts of a landlord not amounting to actual expulsion of the tenant from the leasehold premises, but we do not hesitate to say that nothing resembling a constructive eviction was established by the evidence in the present case. Disorderly conduct and language

in the cafe or clubrooms, remote from defendant's apartment, were proved. She was not personally annoyed by these incidents, except insofar as they tended to affect the reputation of the building, compromise her or interfere with her vocation of music teacher. But, as already stated, the building was prepared for the occupancy of various tenants and for a cafe and the sale of liquors therein. These facts the defendant knew when she leased her apartments, or, if she did not know them, then, she did soon afterwards and submitted to them. It is true the testimony tends to prove there was no noticeably bad conduct in the cafe until during the summer of 1905 and subsequently. But plaintiff continued to occupy her apartment long after that time and until the middle of January, 1906. She made no complaint about the disorderly conduct in the club or cafe or any demand of the plaintiff that it be restrained. Two months before she vacated, she ordered her apartments to be papered and this was done at her request. This act indicated no dissatisfaction with what was going on in the building or intention to quit her apartments. Moreover, it was not shown the plaintiff even rented the basement, or a portion of it, for cafe purposes. The record suggests that the basement was occupied for those purposes before he became the owner of the building. It is obvious that a cafe or club may be conducted without drunkenness, bad language, boisterousness, or other disorderly behavior. Hence the giving of a lease for a club or cafe would not imply that the landlord intended to authorize the use of the premises for disgraceful or immoral purposes. That plaintiff was in any way responsible for disorder on the premises, there was no proof. A constructive eviction from a leasehold cannot be claimed by a tenant because of the acts of another tenant of a portion of the premises, unless the landlord is responsible for what the tenant does. And the landlord ought not

128 App.—11

to be held responsible to the extent of permitting a tenant to vacate during his term, when no complaint was made by the vacating tenant and it does not appear that the landlord authorized or consented to the wrongful acts of the other tenant, or that the lease to the latter was for a purpose which was necessarily immoral, illegal, or a nuisance. [Gilhooley v. Washington, 4 N. Y. 217; Cougle v. Densmore, 57 Ill. App. 591; Lay v. Bennett, 4 Colo. App. 252; Seaboard Realty Co. v. Fuller, 67 N. Y. Supp. 146; 11 Am. and Eng. Ency. Law (2 Ed.), 471.] In view of the undisputed evidence that defendant remained in the premises without complaint for months, while the alleged disorder in the club was going on, and the signal failure to connect the plaintiff in any responsible way with what happened there, it is manifest there is no defense to plaintiff's action for rent. Were it necessary to the decision of the case, we would be compelled to discuss the principles of well-considered opinions cited below, in which conduct of far more annoying and immoral character than that of which the defendant complains, was held to constitute no constructive eviction, as the acts complained of were committed by other tenants or strangers and not by the landlord. [Cougle v. Densmore and Gilhooly v. Washington, supra; Histler v. Wilson, 77 Ill. App. 149; Bristol Hotel Co. v. Pegrain, 98 N. Y. Supp. 512; Gray v. Gaff, 8 Mo. App. 329.]

The judgment is reversed and the cause remanded. All concur.