Benjamin A. Wood, Respondent, v. George C. Gabler, Appellant.
—70 S. W. (2d) 110.

St. Louis Court of Appeals.  Opinion filed April 3, 1934.

*Thompson, Mitchell, Thompson & Young* and *R. Forder Buckley* for appellant.

*Wood, Godfrey & Taylor* and *Rudolph K. Schurr* for respondent.

BECKER, J.—The plaintiff became the defendant's landlord through the purchase of the building in which the defendant was occupying a flat as a tenant from month to month at a rental of $50 per month, payable in advance on the 15th day of each month. The defendant paid his rent for the period up until January 15, 1932, on which date he failed to pay the $50 dollars then due, covering his rent from January 15th to February 15th. The defendant vacated the flat on January 19th, without having given plaintiff the statutory notice required under Section 2584, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., Sec. 2584, p. 4832), but sent a check tendering payment of rent for the four days from January 15th to January 19th. The landlord returned the check and made demand for the January rent, and later, upon failure to find a tenant to take defendant's place, made demand for the rent for the month of February. Defendant refused payment and thereupon plaintiff filed his action for rent in two counts before a justice of the peace. Upon appeal in the circuit court the defendant filed an amended answer admitting occupancy of plaintiff's premises and his removal therefrom on January 19, 1932, setting up the defense of constructive eviction, and renewed his tender of $6.67 for the occupancy of said premises for the days of January 15th to January 19, 1932. Defendant filed also an amended counterclaim asking damages in the sum of $100 against the plaintiff.

On a trial of the case the defendant requested the right to open and close, which request was denied him by the trial court. Thereupon plaintiff was sworn and during the cross-examination of the plaintiff the court sustained an oral demurrer to the defendant's counterclaim and a motion to strike from the defendant's amended answer the defense of constructive eviction, leaving the defendant standing for trial upon his general denial alone. At the conclusion of plaintiff's own testimony the court peremptorily instructed the jury to find in favor of plaintiff on both counts in his petition. From the resulting judgment the defendant appeals.

It is here urged on appeal that the trial court erred in sustaining plaintiff's oral motion to strike the affirmative defense of constructive eviction pleaded in defendant's amended answer, and in sustaining plaintiff's oral demurrer to the defendant's amended counterclaim. Each of these points is well taken.

Defendant's amended answer alleges that defendant vacated the premises "because of the fact that his quiet, peaceable and uninterrupted possession of the same was completely impaired by the wrongful conduct of the plaintiff herein through his affirmative acts and omissions of duty to such an extent that the premises were rendered untenable, in the following particulars, to-wit:

"1. Plaintiff permitted the basement, over which he retained control and which he reserved for the common use of his tenants, to become damp and unhealthful, particularly to this defendant, his wife and two young children, inasmuch as his apartment was a first floor apartment, situated directly over the said basement.

"2. Plaintiff retained control and reserved for the common use of his tenants the first floor porch, the floor of which constituted the roof of defendant's garage; that defendant rented the premises from said plaintiff for $50 a month, to include the dwelling rooms and the garage space; that plaintiff negligently permitted the floor of the said porch to fall into such a state of disrepair that large quantities of water, during times of rain, flowed through the floor of said porch and onto defendant's automobile, seriously damaging the same.

"3. Plaintiff retained control of and reserved for the common use of his tenants the basement of the said apartment building. In the said basement were located furnaces generating steam for the purpose of heating the four apartments in said building; that one of these furnaces, not the one used by defendant herein, but that of another tenant, was permitted by the plaintiff to fall into such a state of disrepair that the valve thereof would frequently give forth a loud report many times each day and during the hours of the night, to such an extent as to disturb the slumber of defendant and his family and as to terrify defendant's infant children; that at said times of popping off as aforesaid, the said furnace would emit vast clouds of steam into the basement, which would rise up into the portion of the premises occupied by defendant and his family and cause serious inconvenience to and injured the health of defendant, his wife and children; that said condition of said furnace was well known by the plaintiff herein, and that he attempted to have said condition remedied, but did so so negligently that the condition continued to exist unabated."

The answer states that all of these conditions above mentioned

were well known to plaintiff and that as the result of said condition he was forced to abandon and move from the premises.

It is readily observable that the defendant's answer does not set up a defense of an alleged mere breach on the part of the landlord of a covenant to repair, but alleges a constructive eviction arising out of the breach of the implied covenant for quiet enjoyment.

In Dolph v. Barry, 165 Mo. App. 659, 1. c. 668, 148 S. W. 196, in the course of the opinion, it is held that "a constructive eviction may be found, even though no actual entry on the premises is made by the lessor, when it appears that he, or one acting under his authority, does some act amounting to intentional, injurious interference by the landlord with the tenant's possession and which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises, or any part thereof, or materially impairs such beneficial enjoyment. A mere trespass on the part of the landlord will not suffice, but to constitute an eviction by construction of law, the wrongful conduct of the landlord must be sufficient, through affirmative act or omission of duty, to render the premises untenable for the purpose for which the tenant leased them or at least seriously interferes with their permanent use. [See Delmar Invest. Co. v. Blumenfield, 118 Mo. App. 308, 94 S. W. 823; Vromanis Apts. Co. v. Goodman, 145 Mo. App. 653, 123 S. W. 543.]"

Any wrongful act or any neglect or default on the part of the landlord whereby the premises are rendered unsafe, unfit or unsuitable for occupancy and a tenant is thereby deprived of the beneficial enjoyment of the premises, amounts to the constructive eviction if the tenant abandons the premises within a reasonable time. [16 R. C. L., sec. 171, p. 686, sec. 176, p. 690; 36 C. J., sec. 988, p. 261, sec. 989, p. 263, sec. 992, p. 264.]

The failure on the part of the landlord to keep in repair part of the premises which he retains in his control may amount to a constructive eviction. [Smith v. Greenstone (Mo. App.), 208 S. W. 628.]

But respondent cites the case of Gray v. Gaff, 8 Mo. App. 329, as holding to the contrary. A reading of the Gray case shows it is not in conflict. There the tenant, under a lease, occupied a part of the premises as a stable for his horses. Later on the landlord rented another part of the premises for a restaurant, over the protest of the tenant, who claimed that such use was injurious to his horses and that the landlord had given a verbal promise, at the time the lease was executed, that during the term of the lease the landlord would not let any part of the premises for any purpose that would interfere with the lessee's business. The court held that under the facts in the case it was an interference by one tenant with another, and that since the letting of the premises for use as a restaurant was not necessarily injurious to the defendant, and the injury was the result of the man-

ner in which they were used by the tenant operating the restaurant, there was no breach; of the covenant for quiet enjoyment nor a constructive eviction, and that the defendant was liable for the rent. The facts in the instant case are different. Here the alleged interference is by the landlord's direct act and falls within the class of cases such as Jackson v. Eddy, 14 Mo. 212, in which it is held that "the consideration of the lessee undertaking to pay rent is the quiet, peaceable and indisputable (undisturbed) possession of the premises leased, and is, in its nature, a condition precedent to the payment of rent. If the lessor by any wrongful act disturbs that possession which he should protect and defend, he thereby forfeits his right, and the lessee may abandon the possession of the premises leased, and thereby exonerate himself from liability to pay rent." This distinction is clearly pointed out in O'Neill v. Nanget, 44 Mo. App. 279.

Respondent however contends that there is no such thing as constructive eviction in a tenancy from month to month, and that such a tenant who becomes dissatisfied with the condition of the premises has but one remedy and that is to give his landlord thirty days' notice, and vacate in conformity with such notice, and that the only defense to a suit for rent in that situation is payment. We have read the cases and authorities cited us by respondent but find that none of the authorities or cases are in point.

Under the authorities cited, supra, we are clear in the view that the acts and omissions of the landlord alleged in defendant's amended answer constitute an allegation of a constructive eviction by the plaintiff of the defendant. It follows that the trial court erred in striking said defense from the defendant's answer.

Likewise the trial court erred in sustaining plaintiff's oral demurrer to defendant's amended counterclaim.

The defendant's counterclaim alleges his occupancy of one of four apartments in an apartment building owned by plaintiff; that at the time he moved into the premises they were in good condition in all respects; that the basement of the apartment was located directly under the rooms occupied by him, and that the plaintiff at all times retained control of the basement for the common use of all of his tenants in said building, and that plaintiff retained control of and undertook to keep in repair four furnaces which were located in the apartment building, one of which furnaces was located directly beneath the defendant's apartment; that this said furnace became defective in that it permitted huge clouds of steam to be given forth therefrom on numerous occasions during the hours of the day and night, and that each time it would give forth a loud and startling explosion; that plaintiff negligently permitted the walls of the basement to become cracked and to fall into such a condition of disrepair as to permit water to seep into the basement, and a damp and

unhealthful condition existed therein, when by the exercise of ordinary care plaintiff could have prevented this condition; that by reason of the dampness of said basement and the clouds of steam given forth from the furnace, as above outlined, rising up into defendant's apartment, his two infant child were caused to contract colds and become sick, by reason of which defendant was compelled to spend $50 in doctor's bills; that this condition was known to the plaintiff or could have been known by the exercise of ordinary care. The counterclaim further alleges the contract for the letting of the apartment, between himself and plaintiff, included a garage; that the roof of the said garage was and is the floor of the first floor porch, over which porch the plaintiff retained control, and which he reserved for the common use of his tenants; that the plaintiff negligently permitted the floor of the porch to fall into such a state of disrepair as to permit rain and other water to run through the floor of said porch upon and onto defendant's automobile, ruining the finish thereof and damaging defendant in the amount of $38. The counterclaim further states that as a result of these conditions the apartment was made untenable and that he was compelled to abandon the occupancy thereof and was compelled to expend the sum of $12 in moving to another residence. The counterclaim concludes with a prayer for a judgment against plaintiff in the sum of $100 and costs.

Plaintiff's action being one for rent and the items of damage set up in defendant's counterclaim arising out of alleged acts and omissions of the landlord in failing to keep in proper repair those portions of the premises which were retained by the landlord and under his control for use in common by all the tenants in the building, we must rule that the defendant's counterclaim is a cause of action arising out of the contract or transaction set forth in plaintiff's petition which, under Section 777, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., Sec. 777, p. 1022), is permissible. [See Ritchie v. Hayward, 71 Mo. 560; Barnard v. Weaver (Mo. App.), 224 S. W. 152; Kamerick v. Castleman, 23 Mo. App. 481.]

In Fleeman v. Pittman, 216 Mo. App. 330, 264 S. W. 442, a suit to recover rent, the jury found for the plaintiff for an amount of rent and also for the defendant on his counterclaim. The plaintiff on appeal assigned as error that no counterclaim is permissible where plaintiff's cause of action is on contract and the defendant's counterclaim is in tort. In the course of the opinion the court said: "It is true that a tenant cannot file a counterclaim based on the landlord's tort in a suit by a landlord for rent on a contract where the act of the landlord does not amount to an eviction. . . . The act of the landlord in the case at bar amounts clearly to an actual eviction, and therefore a breach of the implied covenant of quiet enjoy-

ment which formed a consideration for the rent paid. Where the act of the landlord is tortious, it may be set up as a counterclaim in a suit for rent where such act amounts to an actual eviction breaching the implied covenant of quiet enjoyment.''

It is apparent from these authorities that in the present case, where plaintiff sued for rent, his right to recover was predicated upon the fact that he did not breach the implied covenant for quiet, peaceable and uninterrupted possession, or in other words, did not constructively evict the defendant. The defense interposed is that such a constructive eviction did occur and the same facts relied upon to constitute the constructive eviction are set forth in defendant's counterclaim. Hence, there is but one single transaction involved herein and the demurrer to defendant's counterclaim was erroneously sustained.

There is abundant authority to the effect that each of the items of damage included in defendant's counterclaim is properly included therein. [36 C. J., sec. 897 (ee), p. 216; Sec. 937 (ff), p. 235 (aa); Bloecher v. Duerbeck (Mo.), 62 S. W. (2d) 553; Shaw v. Butterworth, 327 Mo. 622, 38 S. W. (2d) 57; 16 R. C. L. 697; 36 C. J., sec. 1028, p. 281.]

It follows that the demurrer to defendant's counterclaim was erroneously ruled.

For the errors noted the judgment is reversed and the cause remanded. *McCullen, J.*, concurs; *Hostetter, P. J.*, not sitting.