# CLIFFORD M. DOLPH, Appellant, v. MARGARET BARRY, Respondent.

**St. Louis Court of Appeals, June 4, 1912.**

1. **LANDLORD AND TENANT: Eviction: Suspension of Rent.** The consideration of the lessee's undertaking to pay rent is the quiet, peaceable and undisturbed possession of the premises leased, and the lease implies a covenant for this, on the part of the lessor, which is in its nature a condition precedent to the payment of rent, and hence, if the lessor, by any wrongful act, disturbs the possession of the lessee, which he should protect and defend, the lessee may abandon the possession of the premises and thereby relieve himself from liability to pay rent.

2. ———: **Actual Eviction.** An actual eviction exists where the lessor wrongfully enters upon the leased premises and by affirmative acts deprives the lessee of the beneficial use thereof, either in whole or in part.

3. ———: **Constructive Eviction.** A constructive eviction may be found, even though the lessor does not actually enter upon the demised premises, where he does some act amounting to intentional or injurious interference with the lessee's possession and depriving him of the means or power of beneficial enjoyment of such premises, or any part thereof, or materially impairing the same. A mere trespass on the part of the lessor will not suffice, but his wrongful conduct must be sufficient, through affirmative act or omission of duty, to render the premises untenantable for the purpose for which the tenant leased them, or, at least, seriously interfere with their permanent use.

4. ———: **Duty of Landlord to Repair: Breach of Covenant.** No duty is imposed upon a landlord by the common law to make repairs during the term of a lease, but he may create such an obligation against himself by a stipulation in the lease; and if, under such an obligation, the leased premises become untenantable by reason of the lessor's failure to make repairs, the breach of the covenant to repair not only operates to impair the consideration for the lease, but also operates as a breach of the implied covenant for quiet enjoyment of the premises.

5. ———: ———: ———: **Constructive Eviction: Suspension of Rent.** Where a lessor omitted and refused to repair the roof of a leased storeroom, as he was obligated by the lease to do,

Dolph v. Barry.

and, as a result, large quantities of water percolated through into the storeroom and damaged the lessee's goods, the lessee was justified in abandoning the premises and refusing further payment of rent therefor; the lessor's breach of the covenant to repair amounting to a constructive eviction.

6. ———: Actual Eviction: Constructive Eviction: Suspension of Rent. Where there is an actual eviction of the lessee by the lessor, the whole rent is suspended until possession is restored to the lessee, even though only a part of the premises is appropriated by the lessor and the lessee continues to occupy the remainder; but where the eviction is constructive, in order to render it available to defeat the entire rent, the lessee must abandon the entire premises.

7. COURTS: Rules of Decision. While it is the duty of the courts to declare the law, it is their duty, as well, in its proper application, to reckon with those fundamental principles of good conscience essential to attain a just result under the circumstances of the particular case.

8. LANDLORD AND TENANT: Constructive Eviction: Partial Abandonment: Abatement of Rent. The lessee of a three-story building, which was leased in contemplation that the first story would be used for a store and the two upper stories sublet for office rooms, after subletting the upper stories for her full term, vacated the first story, by reason of its becoming untentantable through the lessor's failure to repair the roof, as he had expressly obligated himself to do, but her subtenant remained in possession of the other stories. Held, that the lessee was entitled to a pro rata abatement of the rent.

9. TRIAL PRACTICE: Questions of Fact: When Referable to Jury. Where there is evidence on both sides of an issue of fact, the question should be submitted to the jury.

10. APPELLATE PRACTICE: Trial Practice: Findings by Jury: Instructions. Although there is evidence to support an issue, the record will present no finding of fact thereon by the jury, unless it was submitted to them by instruction.

11. LANDLORD AND TENANT: Waiver of Rights by Lessor. A lessor may waive rights accorded to him by the law for his personal benefit, provided he acts advisedly.

12. ———: Acceptance of Surrender: Suspension of Rent. Where a lessor breaches his express obligation to keep the leased premises in a tenantable condition, and the lessee abandons her portion, and notifies her sublessee to vacate the remainder, but the lessor requests the sublessee to remain in possession, notwithstanding the lessee's notice, the lessor, by such request, waives his right to insist on a surrender of the entire premises

as a condition precedent to an abatement of the entire rent, and the entire rent is suspended, as though the entire premises were abandoned and surrendered by the lessee; and the fact that thereafter the lessor refused to accept rent from the sublessee would not alter the situation.

13. **WAIVER: Withdrawal.** A waiver once attached may not be withdrawn by a change of inclination.

14. **LANDLORD AND TENANT: Acceptance of Surrender: Tenancy at Will.** Where, after an abandonment of leased premises by the lessee, for sufficient cause, a subtenant remains in possession of the part sublet to him, at the request of the lessor, a tenancy at will between the lessor and him is created, operating as an acceptance of the surrender of the entire premises, notwithstanding the lessor notified the lessee that he held the keys to the premises, surrendered by her, subject to her order.

Appeal from St. Louis City Circuit Court.—*Hon. D. Fisher,* Judge.

REVERSED AND REMANDED.

*Frank K. Ryan* for appellant.

(1) The court should have given appellant's instruction No. 1 to find for plaintiff in the amount sued for, because, aside from the insufficiency of respondent's evidence as to the leased premises being untenantable, the respondent's evidence as to vacating said premises is not tenable; it appearing that respondent's tenant remained after such alleged vacating and during all the time covered by appellant's claim for rent in possession of the second and third stories of the leased building. Bless v. Jenkins, 129 Mo. 647; Constant v. Abell, 36 Mo. 174; 11 Am. and Eng. Ency. Law (2 Ed.), p. 459; Biggs v. McCurley's Admr., 79 Md. 409; McFarland v. Pierson, 21 Ill. App. 566; Doolittle v. Selkirk, 28 N. Y. Supp. 43; Speckles v. Sacks, 1 E. D. Smith (N. Y.) 253; Wright v. Lattlin, 30 Ill. 296; Huber v. Ryan, 56 N. Y. Supp. 135. (2) The failure to tender possession of the entire leased premises alone disposes of respondent's contention

that there was a constructive eviction.  Bertram v.
Martin, 90 Ill. 438; Patterson v. Graham, 40 Ill. App.
400; Lipran v. Osten, 93 Ill. 93; Henderson v. Squire,
L. R. 4 Q. B. 170; Schilling v. Holmes, 23 Cal. 227;
Campau v. Mitchell, 103 Mich. 617.  (3)  Section 7924,
Revised Statutes 1909 (Sec. 2393, R. S. 1889), is no
warrant for respondent's theory that such section
covers a covenant to make repairs.  O'Neil v. Flana-
gan, 64 Mo. App. 87.  (4)  Plaintiff's demurrer to the
evidence under defendant's counterclaim should have
been sustained, because such evidence did not show
any damages that are recoverable in an action for
breach of covenant to make repairs.  Wisdom v. New-
berry, 30 Mo. App. 241; Fisher v. Goebel, 40 Mo. 475;
Sutherland on Damages (3 Ed.), sec. 873; Green v.
Bell, 3 Mo. App. 29; Reinel v. Jones, 38 App. Div.
(N. Y.) 441; Dormir v. Potter, 5 Denio, 306; Brooklyn
v. Railroad, 47 N. Y. 475; Cook v. Soule, 56 N. Y. 420;
Thompson v. Shattuck, 2 Met. 615.

*R. F. Walker* for respondent.

(1)  The lease created a covenant that the land-
lord would give the tenant the quiet enjoyment of the
premises during the term.  Hamilton v. Wright, 28
Mo. 199; Geer v. Zinc Co., 126 Mo. App. 173; Beam v.
Bakewell, 224 Mo. 227; Jackson v. Eddy, 12 Mo. 209;
Dyett v. Pendleton, 8 Cow. 727; Wilson v. Finch Hat-
ton L. R., 2 Ex. D. 336; Vann v. Rouse, 94 N. Y. 401;
1 Taylor on Landlord and Tenant, secs. 304, 318;
People v. Murphy, 17 N. Y. Sup. (10 Hun) 151.  Quiet
enjoyment in this case means that the landlord will
afford the tenant the opportunity to use the premi-
ses for the purpose for which they were rented.  Sub-
way Co. v. St. Louis, 169 Mo. 333; Witte v. Quin, 38
Mo. App. 681; Rogers v. Paint Co., 118 Mo. App.
303; Lynch v. Baldwin, 69 Ill. 210.  The landlord's
covenant to keep the roof and downspouts in repair,

and that of tenant to pay rent, were mutually dependent and equally binding upon the parties. The landlord's failure to comply with his covenant forfeited his right to demand compliance by the tenant of hers. 3 Sutherland on Damages (3 Ed.), sec. 848, p. 2523; Christopher v. Austin, 11 N. Y. 216; Kew v. Trainor, 150 Ill. 150; Sigmund v. Newspaper Co., 82 Ill. App. 178; Royce v. Guggenheim, 106 Mass. 201; Piper v. Fletcher, 115 Iowa, 263. An obligation to pay rent ceases when the tenant is deprived in whole or in part of the use of the premises by the landlord, the tenant's agreement having force only from the consideration of the enjoyment of the premises for which they were rented. Land Co. v. Seidel, 135 Mo. App. 185; Subway Co. v. St. Louis, 169 Mo. 333; Delmar v. Blumenthal, 118 Mo. App. 315; Underhill on Landlord and Tenant, p. 1385; Smith v. McEnamy, 170 Mass. 26; Heinrich v. Mack, 56 N. Y. Supp. 155; Colburn v. Morrill, 117 Mass. 262. (2) The failure of the landlord to keep the roof and downspouts in repair constituted an eviction, such failure resulting in depriving the tenant of the enjoyment of the premises. 2 McAdam on Landlord and Tenant (3 Ed.), 1291; Tallman v. Murphy, 120 N. Y. 351; Edmison v. Lowery, 3 S. D. 77; Insurance Co. v. Sherman, 46 N. Y. 372; Bissell v. Lloyd, 100 Ill. 214; 2 Tiffany on Landlord and Tenant, pp. 1160, 1266, 1267; Land Co. v. Seidel, 135 Mo. App. 185; Damkroeger v. Pearson, 74 Minn. 77; Hall v. Irwin, 78 App. Div. 107, 79 N. Y. Supp. 614; 1 Taylor on Landlord and Tenant, sec. 309a; Tiedeman on Real Property, sec. 153; Barrett v. Boddie, 158 Ill. 479; Cheairs v. Coates, 77 Miss. 846; Upton v. Townsend, 17 C. B. 51; 11 Am. and Eng. Ency. Law (2 Ed.), 458, 461; Skaggs v. Emerson, 50 Cal. 3; Valentine v. Woods, 110 N. Y. Supp. 757; Brolaskey v. Loth, 5 Phila. (Pa.) 81; Rea v. Algren, 104 Minn. 316, 124 Am. St. Rep. 627; Bass v. Rollins, 63 Minn. 226; Alger v. Kennedy, 49 Vt. 109; Ash v.

Meeks, 118 N. Y. Supp. 821. (3) A tenant evicted from a part of leased premises is under no legal obligation to pay rent for the balance, although he continues to enjoy it. 2 McAdam on Landlord and Tenant, sec. 419, p. 1435; and note; Anderson v. Insurance Co., 21 Ill. 601; Kip v. Merwin, 52 N. Y. 542. (4) Partial eviction from the premises by the acts of the landlord will relieve the tenant from the liability for rent upon any portion of the premises during the continuance of the eviction. Briggs v. Hall, 4 Leigh 48; Camarillo v. Fenlon, 49 Cal. 207; Warren v. Wagner, 75 Ala. 188; Fitchburg v. Melvin, 15 Mass. 270; Reed v. Reynolds, 37 Conn. 474; Walker v. Tucker, 70 Ill. 527; Hayner v. Smith, 63 Ill. 430; Peck v. Hiler, 24 Barb. 178; McClurg v. Price, 59 Pa. 420; Dry Goods Co. v. Pabst, 50 C. C. A. 295, 112 Fed. 381; 2 Tiffany on Landlord and Tenant, sec. 185, p. 1264; Sherman v. Williams, 113 Mass. 481; Minneapolis v. Williamson, 51 Minn. 473; Leishman v. White, 1 Allen, 489; Taylor on Landlord and Tenant (7 Ed.), secs. 378, 388; Wood on Landlord and Tenant, sec. 473; Subway Co. v. St. Louis, 169 Mo. 333; 2 Tiffany on Landlord and Tenant, sec. 182b, pp. 1160, 1266; Morris v. Kettle, 57 N. J. L. 218; Fudder v. Ruby, 76 Mass. (10 Gray) 285; Hayner v. Smith, 63 Ill. 430; Bergman v. Papia, 58 Misc. (N. Y.) 532. (5) Continued occupation of premises by the subtenant with the permission of the owner, without any lease or agreement to pay rent, and without rent being paid, created a tenancy at will between the landlord and Dr. Johnson. 1 Underhill on Landlord and Tenant, sec. 137, p. 189. (6) The landlord's express direction to the subtenant Johnson to "stay in the premises" after their abandonment by the tenant and her previous notice of such intention given the landlord and the subtenant constituted a waiver of the landlord's right to contend that the subtenant thereafter held under the lease from the tenant. Smith v.

Huff, 141 Mo. App. 476. (7) The court did not err in refusing to give appellant's peremptory instruction at the close of respondent's testimony. Davies v. Vories, 141 Mo. 234; Gribble v. Everett, 98 Mo. App. 32; Oliver v. Love, 104 Mo. App. 73; Dry Goods Co. v. Pabst, 50 C. C. A. 295, 112 Fed. 381; Bank v. Gregg, 74 Mo. App. 639.

NORTONI, J.—This is a suit for rent. Defense is made to the rent charge on the ground of a constructive eviction, which operated a breach, on the part of plaintiff, of the covenant for quiet enjoyment implied in the lease, and, furthermore, defendant interposed a counterclaim for damages accrued through plaintiff's breach of an express covenant in the lease for repairs. The finding and judgment were for defendant and against plaintiff on the cause of action for rent declared upon in the petition and defendant's counterclaim set forth in the answer. From this judgment plaintiff prosecutes the appeal.

Plaintiff owns a three-story brick building, numbered 615 Locust street, St. Louis. By an indenture of lease, he let the entire premises to defendant for a term of three years, commencing on the 15th day of March, 1908, and ending on the 15th day of March, 1911, at an annual rental of $6500, payable by defendant lessee in monthly installments of $541.65 in advance. The lease stipulates that the first story of the demised premises should be used and occupied by the lessee as a business house for the sale of ladies' apparel. It seems that the second and third stories of the building are suitable for office and residence purposes, and the lease authorized the lessee to sublet either one or both of such stories to another. The first story of the building is about 125 feet in depth, but the second and third stories are not so deep; that is to say, a considerable portion of the first story of the building extends in the rear beyond the second and

third stories.  By an express covenant in the lease, plaintiff lessor agreed to repair the roof and downspouts on the building and maintain the same in good condition at all times during the term.   Defendant, the lessee, installed a stock of ladies' corsets and underwear in the first story of the building and conducted a retail store therein for the sale of such goods. The second and third stories she sublet, by a lease in writing, for a term beginning and ending on even dates with that stipulated in her lease, to Dr. Johnson, a dentist, for occupancy as dental offices and his residence.   The evidence tends to prove that both the roof and downspouts on the rear portion of the first story of the building became defective and plaintiff, the lessor, refused to repair them, though he was frequently requested so to do.   Because of this condition of the roof and the downspouts therefrom, on each recurring rain large quantities of water percolated through the roof into the store beneath and damaged defendant's goods.   Defendant made repeated requests of plaintiff and his agent to repair the roof and downspouts, in accordance with his covenant in the lease to that effect, but he omitted and refused to do so. After having suffered damage to her stock of goods because of the defective condition of the roof and downspouts, defendant treated the matter as a constructive eviction from the premises, notified plaintiff lessor to that effect, and abandoned the first story of the building occupied by her as a store.   Upon removing from the premises, defendant delivered the keys thereof at plaintiff lessor's agent's office, and such agent wrote her a letter that they held the keys thereafter subject to her order.   Prior to removing from the storeroom, defendant served a written notice upon her subtenant, Dr. Johnson, to the effect that she had been evicted from the premises and abandoned the same, and requested him to vacate the second and third stories as well.   The subtenant remained in possession, however,

throughout his term, but he says he did so at the request of plaintiff, the lessor. However, it appears that both defendant lessee and plaintiff lessor declined to accept the rent from the subtenant after defendant vacated the storeroom and abandoned the same.

The case concedes that defendant declined to pay rent after abandoning the premises, but she paid all installments due up to the day of such abandonment. On this appearing conclusively, it is argued the verdict should have been for plaintiff and that the court erred in submitting the matter of an eviction to the jury, for, it is said, a mere breach on the part of a lessor of a covenant in the lease for repairs is not sufficient to operate an eviction but, instead, remits the lessee to his suit on the covenant for the breach. Generally speaking, the proposition may be conceded to be true, but it is wholly without influence here, for the eviction asserted relates to the breach of the covenant implied in the lease for quiet enjoyment and reckons with the covenant of the lessor to repair as an incident only. No one can doubt that the consideration of the lessee's undertaking to pay rent is the quiet, peaceable and undisputed possession of the premises leased, and for this the lease implies a covenant on the part of the lessor which is in its nature a condition precedent to the payment of the rent reserved. Therefore, if the lessor, by any wrongful act, disturbs that possession, which he should protect and defend, he thereby forfeits his right, and the lessee may abandon the possession of the premises leased and thereby exonerate himself from liability to pay rent. Such is the doctrine of Jackson v. Eddy, 12 Mo. 209, which is frequently reaffirmed. An eviction may be either actual or constructive. An actual eviction exists when the lessor wrongfully enters upon the premises demised and by affirmative acts deprives the lessee of the beneficial use thereof, either in whole or in part.

A constructive eviction may be found, even though no actual entry upon the premises is made by the lessor, when it appears that he, or one acting under his authority, does some act amounting to intentional, injurious interference by the landlord with the tenant's possession and which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises, or any part thereof, or materially impairs such beneficial enjoyment. A mere trespass on the part of the landlord will not suffice, but to constitute an eviction by construction of law, the wrongful conduct of the landlord must be sufficient, through affirmative act or omission of duty, to render the premises untenantable for the purpose for which the tenant leased them or at least seriously interferes with their permanent use. [See Delmar Investment Co. v. Blumenfield, 118 Mo. App. 308, 94 S. W. 823; Vromania Apartments Co. v. Goodman, 145 Mo. App. 653, 123 S. W. 543; 11 Am. & Eng. Ency. Law (2 Ed.), 471; McAdam (4 Ed.), 1381.]

The common law imposes no duty upon the landlord to make repairs during the term of the lease, but if by a stipulation in the lease the lessor agrees to do so, of course, the obligation is cast upon him. It may be that the premises demised become untenantable because of the want of such repairs as the landlord has agreed to make. In such circumstances, the breach of the covenant touching repairs, of course, not only operates to impair the consideration for the lease, but operates as well to breach the implied covenant for the quiet enjoyment of the premises. Such is the case here, for the lessor covenanted in the lease to make repairs to the roof and downspouts and to maintain the same in good order. In such cases, a constructive eviction may result from a mere omission on the part of the lessor to perform the obligation assumed, provided the lessee abandons the prem-

ises to the lessor. For instance, when the premises become untenantable by reason of the failure of the landlord to perform such agreement as to repairs or to do what is lawfully required of him, the effect is eviction, which permits the defendant to abandon the premises and escape the further payment of rent therefor. [See Huggins v. Jasper, 134 Mo. App. 1, 114 S. W. 545; Delmar Investment Co. v. Blumenfield, 118 Mo. App. 308, 94 S. W. 823; Vromania Apartments Co. v. Goodman, 145 Mo. App. 653, 123 S. W. 543; 11 Am. & Eng. Ency. Law (2 Ed.), 478.] From the evidence in the record, it was competent for the jury to find an eviction from the storeroom, for it is entirely clear that defendant abandoned so much of the premises, even though she is to be regarded as having retained possession of the second and third stories through her subtenant, Dr. Johnson. The lease in plain terms provides for the occupancy of the storeroom for the sale of ladies' apparel. Obviously, the parties contemplated a use which required a good roof and protection from the elements. The record is replete with evidence tending to prove that because defendant omitted and refused to repair the roof and downspouts, in accordance with his covenant, large quantities of water were permitted to percolate through into the storeroom and damage plaintiff's goods. Obviously, this rendered the building untenantable and defendant was justified in abandoning the same, as she did.

But it is said defendant retained possession of the premises for the whole term through the occupancy of the second and third stories by her subtenant, Dr. Johnson, and the law requires an abandonment of the whole. The court submitted the matter to the jury by instruction, to the effect that defendant was acquitted from the entire rent, if it appeared she was constructively evicted from and abandoned the storeroom through its becoming untenantable because

of plaintiff's omission to repair the roof and down-spouts, and directed the jury, too, that the fact that Dr. Johnson, the subtenant, continued in possession of the second and third stories was wholly immaterial, provided an eviction from a part of the premises appeared. It is entirely clear that the doctrine of this instruction is erroneous in so far as it declares the continued occupancy of the subtenant was immaterial in this case of a constructive eviction. In this, the instruction seems to confuse the rule which obtains as to actual eviction with that which prevails when nothing more than a constructive eviction appears. There can be no doubt that, in a case where an actual eviction appears—as where the lessor himself, or through some one authorized by him, actually enters upon the demised premises and appropriates a portion thereof to his own use, or deprives the tenant of the benefits of any portion thereof—there is a total suspension of the whole rent, even though but a portion of the premises are thus appropriated by the landlord, until the tenant is restored to the whole possession. [2 McAdam, Landlord and Tenant (4 Ed.), p. 1385.] This rule obtains in such cases notwithstanding the fact that the tenant may continue the occupancy of a portion of the leased property. Such eviction presents a tortious aspect involved in the wrongful trespass of the landlord. Because of this, the reason of the rule is said to be, that as the estate created by the lease is an entire one, for which one consideration is given, the landlord may not evict a tenant from a portion of the demised premises and then be permitted to apportion his own wrong by insisting upon a part of the rent, for to hold otherwise, it is said, would be to encourage landlords to evict their own tenants (whose possession they are rather bound to protect) when such eviction would inure to the pecuniary advantage of such landlords. Therefore, when an actual eviction appears, the entire rent

is suspended until a restoration of the entire possession is made, and this is true even though the tenant remains in possession of a portion. [Witte v. Quinn, 38 Mo. App. 681.] Touching this question, McAdam says, in his excellent work on Landlord & Tenant (4 Ed.), Vol. 2, p. 1385: "Where there has been an actual eviction from part of the premises, other than by title paramount, the tenant may retain possession of what he has, the entire rent being suspended until full possession has been restored, the law declining to apportion rent in favor of a wrongdoer." [See, also, Morris v. Kettle, 57 N. J. Law Rep. 218.]

But though such be the rule as to an actual eviction, another prevails when the eviction is by construction of law, for to complete such an eviction, it is essential that the premises shall be abandoned by the lessee. In every case of constructive eviction, in order to render the eviction available to the end of defeating the entire rent, it must appear that the lessee abandoned the premises for that cause. As to such eviction, the rule is thus stated in 11 Am. & Eng. Ency. Law (2 Ed.), p. 479: "It is well settled, as a general rule, that there can be no constructive eviction unless the tenant abandons the premises on account of the acts or circumstances claimed to operate as an eviction." Mr. McAdam thus states the law as to a constructive eviction: "Where the eviction is constructive merely, it is no eviction in law unless followed by a complete abandonment of possession by the tenant." [See 2 McAdam, Landlord & Tenant (4 Ed.), p. 1385.] The law is thus declared, too, as we understand it, by our Supreme Court in Jackson v. Eddy, 12 Mo. 209, for upon a close scrutiny of that case it will appear that the instructions declaring the rule of decision at the trial, which were approved on appeal, required the jury to find that the defendant abandoned the premises and offered to surrender possession to plaintiff lessor. That case was one of constructive evic-,

tion. It appeared that Eddy occupied a storeroom in St. Louis, as the lessee of Jackson. The covenant in the lease there involved required the lessee to make repairs, but this is immaterial, for the case was ruled as though a positive encroachment on the part of the lessor appeared against the lessee's estate. The lessor occupied the room, as a grocery store, immediately above that of the lessee's establishment, and it appears the lessor permitted the dripping of salt, tar, etc., from the store occupied by him above, upon the goods in the store of the lessee below. Because of this, Eddy, the lessee, removed from the premises, abandoned the same, and delivered the keys at the lessor's establishment. The lessor returned the keys to the lessee and refused to accept possession of the premises. Thereafter, Eddy, the lessee, placed a sign thereon as for rent, with directions to apply to Eddy. It was argued that a complete abandonment of the premises did not appear, because Eddy retained the keys and advertised the premises for rent, but the Supreme Court declared the question to be one of fact for the jury. Touching this matter, the court said: "In this case, the court by its instruction submitted the question to the jury to find whether, by the conduct or acts of the plaintiff, the storeroom occupied by defendant was rendered unfit for use as a store, and that, in consequence thereof the defendant had surrendered the possession. The jury having found these facts, their verdict was properly given for defendant." The rule of law stated in the opinion and to be deduced from that case clearly requires an abandonment of the premises in order to render the constructive eviction available, and the judgment was affirmed on the ground that it appeared that, though Eddy retained the keys after they were refused by the lessor and placed a sign on the premises for rent, he had nevertheless abandoned and surrendered the premises to the lessor, for he could not do

more than move out and surrender the keys to the lessor, which he did, though the keys were not retained by him. A case much resembling Jackson v. Eddy is Burnham v. Martin, decided by the Supreme Court of Illinois. [See 90 Ill. 438.] There, a constructive eviction appeared and the lessee abandoned the premises but retained constructive possession through keeping the keys. It does not appear in that case that he returned the keys to the lessor, or offered to do so, as in the case of Jackson v. Eddy, supra, and retained them after the refusal of the lessor to accept them, but it does appear that the lessee removed from the premises and retained the keys in his possession thereafter. Upon defending against the rent as for a constructive eviction, the Supreme Court rejected the defense as a valid one, for the reason the tenant retained constructive possession of the premises through keeping the keys of the house without offering them to the lessor. The court said: "The tenant, before he can defend against the recovery of rent, must abandon the premises, and not retain either the actual or constructive possession of them." We, therefore, conclude that the court erred in directing the jury that it was immaterial that Dr. Johnson, defendant's sublessee, continued to occupy the second and third stories of the building throughout the term of the lease, for clearly, in order to be acquitted from the whole rent, the law devolved the duty on the lessee to completely abandon the whole premises.

But though the entire rent is not suspended because plaintiff remained in possession of the two upper stories of the building through her subtenant, it would seem that she is entitled to a pro rata abatement thereof. The authorities declare that where the tenant is actually evicted from a portion of the premises, the entire rent is suspended even though possession is retained of a parcel of the demise. The doctrine with

165 Mo. App.—43

respect to such cases is, that the covenant for quiet enjoyment requires the lessor to confer and protect all of the benefits of the lease to the tenant, for such is the consideration of the demise. The enjoyment of this consideration is a condition precedent to the payment of the rent reserved, and the lessor will not be permitted to take advantage of his own wrong, to the end of apportioning and exacting a pro rata, or any other, part of the rent, for the portion of the premises continued to be occupied by the lessee. The rule as to this matter treats the actual eviction as a tort, which, of course, it is, and denies an apportionment of rent to the landlord because of the tortious aspect of his act involved. However, the principle thus reckoned with in those cases is surely without influence on the question of an abatement of rent in favor of the lessee who has been evicted, as this defendant, and stands wholly free from wrongful conduct. There is no tortious feature presented here for the consideration of the court in so far as the defendant lessee is concerned, for, besides abandoning so much of the premises as were within her power to abandon, she sought to render possession of the whole to the lessor and served a notice on her subtenant, to that end, to quit. Defendant lessee sublet the two upper stories of the building to her subtenant, as was perfectly proper, for her lease from plaintiff stipulated that she might do so. By this sublease, defendant created the relation of landlord and tenant between herself and Dr. Johnson, the subtenant, for the full period of her term. Because of the peculiar construction of the building, the leaking roof and defective downspouts rendered untenantable that portion of the building only which defendant retained for her own occupancy. In other words, the roof and downspouts appertaining to the second and third stories were sufficient, and it was only the roof over the rear portion of the first story, which extended far beyond the second and third

stories, that leaked. The question must be determined, too, to some extent, in view of the subject-matter in contemplation between the parties at the time the lease was made between defendant and plaintiff. This lease contemplated that defendant should occupy the first floor as a store for the sale of ladies' wearing apparel and that she might sublease the second and third stories to another. In these circumstances, it would seem that every precept of natural justice forbids the harsh application of the rule that a constructive eviction of a portion of the premises is not available unless an abandonment of the entire demise appears. While it is the duty of the courts to declare the law, it is their duty as well, in its proper application, to reckon with those fundamental principles of good conscience essential to attain a just result in the circumstances of the particular case, for, after all, such is the constant aim and purpose of the common law. It would seem a harsh application of the rule, indeed, to require this lessee to pay full rent for the storeroom from which she was constructively evicted because of the lessor's omission to repair the roof and downspouts, in accordance with his covenant, for the mere fact that she was unable to abandon and surrender possession of the entire premises. Especially is this true when we remember that the lease itself contemplated a subletting and distinct occupancy. There is no principle of the common law which inhibits a pro rata apportionment of the rent here, in favor of the lessee, for in no sense may she be placed in the attitude of seeking to avail herself of the benefits of a wrongful act on her part. On the other hand, every precept of natural justice suggests that an abatement of the rent should be available to her as for a partial failure of the consideration for the covenant under which she agreed to pay the rent reserved. Touching this matter, we believe that the principle reflected in Willard v. Tillman, 19 Wend. (N. Y.) 358,

should control. It is true that case did not present the question of an eviction, either actual or constructive, but nevertheless an apportionment of the rent was declared to point its proper solution. There, the tenant occupied, under a lease, three rooms in a building and a landing on a navigable canal, for which he agreed to pay ninety dollars per annum as rent "so long as he was permitted to occupy the premises." The three rooms were destroyed by fire, but the tenant continued in possession of the landing which was of some value to him. Ordinarily the tenant is not acquitted from the payment of rent though the demised building is destroyed by fire, but it was said in this case that, because of the peculiar wording of the covenant that he was to pay the rent so long as he was permitted to occupy the premises, the entire rent should abate, as the building was destroyed. The court accepted that view, but, notwithstanding, declared the entire rent should not abate, for the reason the tenant remained in possession of the landing. But it declared, too, that, in the circumstances of the case, there should be a pro rata abatement of the rent. An application of the prinicple of that case here would attain a just result, for, obviously, defendant ought not to be required to pay the full rent under the lease, when, through plaintiff's breach of the covenant to repair, the first story of the building was rendered untenantable. See, also, Taylor on Landlord & Tenant (9 Ed.), sec. 379, where the doctrine of Willard v. Tillman is incorporated in the text. We say this in view of the fact that defendant was authorized by plaintiff to make the sublease and was thereafter wholly unable to abandon and surrender the whole premises because of the obligation outstanding in favor of the subtenant. Furthermore, in the early case of McFadin v. Rippey, 8 Mo. 738, it appears our Supreme Court declared, in the case of constructive eviction from a portion of the premises, as by the landlord filling up the cellar under

the house, that it was proper to abate a portion of the rent and permit a recovery as on *quantum meruit* for use and occupation, it appearing that the tenant remained in possession of the residence above the cellar. [Touching this question, see, also, Tomlinson v. Day, 2 Brod. & Bing. 680; 2 Taylor, Landlord & Tenant (9 Ed.), sec. 649.]

But it may be that plaintiff waived the matter of abandonment of the entire premises and thus precluded his right to insist upon a full surrender, in which event, of course, the payment of the entire rent is suspended identically as though the entire premises were abandoned and surrendered by defendant. After defendant notified Dr. Johnson, the subtenant, that she intended to abandon the premises and requested him to vacate the upper stories, he called upon plaintiff landlord and discussed the matter with him. Dr. Johnson testified that plaintiff requested him to remain in possession of the upper stories, notwithstanding the notice from defendant. It is true plaintiff disputes this and says that no such request was made by him. The evidence is, therefore, *pro* and *con* on the subject, and the question was properly one for the jury, but it seems no instruction was framed upon it. In other words, the record presents no finding of fact by the jury touching this matter, as it was not submitted. There can be no doubt that a lessor may be held to waive rights accorded to him by the law for his personal benefit, provided he acts advisedly touching the same. [See Smith v. Huff, 141 Mo. App. 476, 125 S. W. 1173.] If the jury should find that Dr. Johnson continued to occupy the premises after defendant abandoned same and so remained in possession at the instance and suggestion of plaintiff, then it is competent for the court to declare that a further abandonment of the upper stories was waived by the lessor and the entire payment of rent on the part of defendant suspended. The mere fact that the lessor re-

fused to accept rent from Dr. Johnson thereafter is immaterial, for a waiver once attached may not be thus withdrawn by a mere change of inclination. [See Ball v. Royal Ins. Co., 129 Mo. App. 34, 107 S. W. 1097.] Of course, if Dr. Johnson remained in the premises at the instance and request of plaintiff after defendant abandoned the same, this would create the relation of tenant at will between him and plaintiff lessor and operate as an acceptance of the surrender of the entire premises, notwithstanding plaintiff's agent notified defendant that the keys were held subject to her order. [See 1 Underhill, Landlord & Tenant, sec. 137.]

The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.