William J. WULFF, et al., Respondents,

v.

Alice WASHINGTON, Appellant.

No. WD 32348.

Missouri Court of Appeals,
Western District.

March 16, 1982.

J. Armin Rust, Columbia, for appellant.

Stephen C. Scott, Columbia, for respondents.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Plaintiffs (hereafter referred to as the landlords) had judgment against the defendant, Dr. Alice Washington, hereafter referred to as the tenant, in the sum of $780.50. The amount of the judgment was for unpaid apartment rental in the sum of $940.50, plus $125 for damage to the apartment, less a $285 damage deposit.

The tenant has appealed alleging as error the trial court's refusal to allow her to plead and prove a defense of the landlords' breach of implied warranty of habitability.

The facts are as follows:

Defendant tenant, by written lease dated November 12, 1979, leased an apartment from the plaintiff landlords for a term of 12 months. The agreed rental was $285 per month. In mid-December she commenced to complain about inadequate heat in the apartment. The defendant's landlords made some effort to correct the situation but never got it corrected to defendant's satisfaction. Defendant did not make her rental payments which were due by the terms of the lease on February 1, March 1, April 1 and May 1. On April 13 she vacated the apartment. The apartment was re-let to other tenants beginning May 10.

The landlords on July 9, 1980, filed suit against the tenant for rental owing under the lease up to May 10, the date of the new tenant's occupancy, and for $125 damage to the apartment.

1. *Deposit of rent in court as condition of asserting defense of breach of implied warranty of habitability.*

The tenant filed an answer which set up two affirmative defenses, namely, constructive eviction and breach by the landlords of an implied warranty of habitability. Both defenses were based upon the inadequacy of the heat. Upon motion of the landlords, the trial court struck from the answer the defense of breach of the implied warranty of habitability, on the ground that the tenant had not—an admit-

ted fact—deposited the withheld rent in court as it came due. The trial court deemed *King v. Moorehead*, 495 S.W.2d 65, 77 (Mo.App.1973), to require such timely deposit of rent in court as a condition to the assertion of the defense of the implied warranty of habitability. The tenant's first complaint upon this appeal is of the ruling striking the implied warranty of habitability defense.

The tenant is correct in her contention that she was not required, in the circumstances of this case, to have deposited the unpaid rent in court in order to assert the defense of breach of implied warranty of habitability. The landlords base their position upon the following language from the *Moorehead* opinion:

> . . . [T]he tenant's obligation for rent is dependent upon the landlord's performance of . . . his implied warranty of habitability. Breach of this duty justifies retention of possession by the tenant and withholding of rent until habitability has been restored. A tenant who retains possession, however, shall be required to deposit the rent as it becomes due, *in custodia legis* pending the litigation. See and compare *Javins v. First National Realty Company*, 428 F.2d 1071, 1083, n. 67 [14, 15] (D.C.Cir.1970); Cert. denied 400 U.S. 925 [91 S.Ct. 186, 27 L.Ed.2d 185] (1970); *Hinson v. Delis*, 102 Cal.Rptr. 661, 666 [9], 26 Cal.App.3d, 62, 71 (1972).

The rent deposit requirement is applicable to "a tenant who retains possession". It is not applicable to a tenant who has relinquished possession. As Judge Shangler pointed out in *Moorehead* with respect to a tenant who, as in the present case, had moved out of the rented residence and was sued for unpaid rent, at 76, 102 Cal.Rptr. 661:

> At the time the tenant pleaded in the circuit court, she had already relinquished possession. The affirmative defenses of the tenant-appellant do not seek restora-

tion to a habitable dwelling but are in the nature of counterclaims, alternatively pleaded, for exoneration from rent on the theory of illegality of contract or for set-off in damages against the rent for breach of the implied warranty of habitability.

The tenant there, as in the present case, had made no deposit of rent, but her allegations of uninhabitability were held to state a defense.

Since we hold that the deposit of rent was not a condition to the tenant's assertion of the implied warranty of habitability defense, we do not need to deal here with the mechanics of an occupying tenant's deposit of rent in court where no litigation is pending.[1]

*2. Breach of implied warranty of habitability as coterminous with constructive eviction; relationship of the two doctrines.*

■ The landlords say next that, if the striking of the defense from the tenant's answer was error, yet the tenant was not prejudiced thereby. In this contention the landlords must be sustained, for reasons we now explain.

The tenant in her answer pleaded the same facts (i.e., "failing to provide a heating unit capable of heating the unit adequately during the months of December, January, February, March, and April") for the implied warranty of habitability defense as for the separately stated constructive eviction defense. The evidence on the heat supply to the apartment was presented at trial without restriction and the subject was thoroughly gone into. The court gave the landlords judgment for rental not only for the time the tenant had occupied the apartment (up to April 12) but also for the period of April 12 to May 9, after the tenant had moved out and until it was occupied by new tenants. The landlords correctly argue that it is implicit in the award of rental for the period after the tenant's vacation of the premises and until it was

---

1. The following authorities provide some guidance in the matter of deposits in court of disputed funds: *See Comfort v. Higgins*, 576 S.W.2d 331 (Mo. banc 1978); *State ex rel. State Highway Commission v. Paul*, 368 S.W.2d 419 (Mo. banc 1963); 26A C.J.S. Deposits in Court (1956).

occupied by the new tenants, that the court found against the tenant's constructive eviction defense. *See Ray Realty Co. v. Holtzman*, 234 Mo.App. 802, 119 S.W.2d 981 (1938); *Dolph v. Barry*, 165 Mo.App. 659; 148 S.W. 196 (1912). If the trial court had found for the constructive eviction defense, he would have granted judgment for the rental for the time the tenant occupied the apartment, but not afterwards. The tenant agrees in her brief filed here that a rejection of her constructive eviction defense is implicit in the trial court's judgment.

The landlords then argue that since the court found against the tenant's constructive eviction defense, he necessarily would have found against her implied warranty of habitability defense—in other words, that the two defenses are coterminous.

The tenant argues on the other hand that the two defenses are not coterminous, that the court's finding against the tenant on her constructive eviction defense would not necessarily require a finding against the tenant on an implied warranty of habitability defense. She contends that the conditions resulting from the landlords' dereliction might not be so egregious as to constitute constructive eviction, still they would constitute breach of implied warranty of habitability, for which the tenant would be entitled to a complete or partial abatement of rent. Applying the argument to the case before us, she says the trial court might have believed the heat problem was not severe enough to amount to constructive eviction and yet could have believed that the deficiency entitled her to some reduction in the rent under the warranty of habitability.

We reject this argument. A reading of the cases which have placed the doctrines alongside each other have treated them as being activated by the same conditions. The differences between the two go only to the remedies available to the tenant. In the constructive eviction approach, the landlords' wrongful conduct is described as "substantial interference with the lessee's beneficial enjoyment of the demised premises". In the breach of implied warranty of habitability approach, the same conduct is spoken of as "a substantial breach of a material covenant". Three rather lengthy quotations from the *King v. Moorehead* opinion, which draws heavily upon the cases therein cited, will make this clear:

"A constructive eviction arises when the lessor, by wrongful conduct or by the omission of a duty placed upon him in the lease, substantially interferes with the lessee's beneficial enjoyment of the demised premises. Under this doctrine the tenant is allowed to abandon the lease and excuse himself from the obligations of rent because the landlord's conduct, or omission, not only substantially breaches the implied covenant of quiet enjoyment but also 'operates to impair the consideration for the lease'. *Dolph v. Barry*, 165 Mo.App. 659, 148 S.W. 196, 198 [3] (1912). Thus, the first remedy created by the courts to insure habitability, and to exonerate the tenant's obligation for rent under a lease for lack of it, was 'designed to operate as though there were a substantial breach of a material covenant in a bilateral contract'. *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470, 475 [5] (1969)." *King v. Moorehead*, supra at 70. (Footnote omitted).

"We adopt the view that a lease is not only a conveyance but also gives rise to a contractual relationship between the landlord and tenant from which the law implies a warranty of habitability and fitness by the landlord. Under contract principles a tenant's obligation to pay rent is dependent upon the landlord's performance of his obligation to provide a habitable dwelling during the tenancy. *Lemle v. Breeden*, supra, 462 P.2d l.c. 475 [6, 7]; *Javins v. First National Realty Corporation*, supra, 428 F.2d 1082 [7–10]. A more responsive set of remedies are thus made available to the tenant, the basic remedies for contract law, including damages, reformation and rescission. *Kline v. Burns*, supra, [111 N.H. 87,] 276 A.2d l.c. 252 [2]; *Lemle v. Breeden*, supra, 462 P.2d l.c. 475 [6, 7]." *King v. Moorehead*, supra at 75–76.

"Common law constructive eviction (based upon a fiction which the implied warranty remedy discards) could be claimed only by a tenant who abandoned the premises within a reasonable time. Abandonment was required to maintain the fiction of an eviction and thus the breach of the dependent covenant of quiet enjoyment. The effect of the abandonment requirement was to prevent a tenant from remaining in possession without paying rent. *Dolph v. Barry*, supra, 148 S.W. l.c. 198–200 [4]. Constructive eviction has proved an insufficient remedy for those most likely to have resort to it, low income tenants. The dilemma it raises for them is that they must continue to pay rent and endure the conditions of untenantability or abandon the premises and hope to find another dwelling which, in these times of severe housing shortage, is likely to be as uninhabitable as the last." *King v. Moorehead*, supra at 76–77.

Tenant's argument that breach of implied warranty of habitability as shown by something less than constructive eviction, followed to its logical end, would allow *pro tanto* reduction of rent for conditions ranging from the trivial to the major. That is not the idea of the remedy. It becomes available only upon material breach by the landlord of his warranty of habitability. In *King v. Moorehead*, supra at 76, Judge Shangler wrote:

"The materiality of a breach of warranty claimed by a tenant shall be determined by factors, among others, of the nature of the deficiency or defect, its effect on the life, health or safety of the tenant, length of time it has persisted and the age of the structure. Minor housing code violations which do not affect habitability will be considered *de minimis*."

In *Green v. Superior Court of the City and County of San Francisco*, 10 Cal.3d 616, 637 n. 22, 517 P.2d 1168, 1182, 111 Cal.Rptr. 704, 718 (Cal. bank 1974), the court wrote:

"The recent case of *Academy Spires, Inc. v. Brown* (1970) 111 N.J.:Super. 477, 268 A.2d 556, gives a good indication of the general scope of the warranty of habitability. In that case, a tenant in a multi-story apartment building complained of a series of defects, including (1) the periodic failure to supply heat and water, (2) the malfunctioning of an incinerator, (3) the failure in hot water supply, (4) several leaks in the bathroom, (5) defective venetian blinds, (6) cracks in plaster walls, (7) unpainted condition of walls and (8) a nonfunctioning elevator. The *Academy Spires* court held: 'Some of these clearly go to the bare living requirements. In a modern society one cannot be expected to live in a multi-stories apartment building without heat, hot water, garbage disposal or elevator service. Failure to supply such things is a breach of the implied covenant of habitability. Malfunction of venetian blinds, water leaks, wall cracks, lack of painting, at least of the magnitude presented here, go to what may be called "amenities". Living with lack of painting, water leaks and defective venetian blinds may be unpleasant, aesthetically unsatisfying, but does not come within the category of uninhabitability. Such things will not be considered in diminution of the rent.' (268 A.2d at p. 559.) (See also *Gillette v. Anderson* (1972) 4 Ill.App.3d 838, 282 N.E.2d 149 (warranty of habitability breached by failure to provide adequate bathing facilities).)"

We hold therefore that in finding against the tenant on her constructive eviction defense, the trial court necessarily would have rejected her defense of breach of implied warranty of habitability. The tenant suffered no prejudice from the striking of the latter defense from the answer.

The judgment is affirmed.

All concur.