Marvin **GREENBERG**, Plaintiff–Respondent,

v.

Sandar **SAHA** and Rajsir Saha, Defendants–Appellants.

No. ED 79666.

Missouri Court of Appeals, Eastern District, Division Four.

July 23, 2002.

Francis L. Kenney, III, St. Louis, MO, for appellants.

William G. Buchholz II, Clayton, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Sandar and Rajsir Saha, lessees, appeal the trial court's judgment in favor of their landlord, Marvin Greenberg. According to the lessees, the trial court erred in: (1) construing the lease's late-payment clause to award the landlord $14,485 in late charges; (2) awarding the landlord double rent pursuant to Section 534.347 RSMo. 2000 [1]; and (3) finding that the lessees were not constructively evicted. Because the trial court erred in construing the late-payment clause, we modify that award; because there is no substantial evidence to support the award of double rent, it is reversed; because the lessees were not constructively evicted, the modified judgment is otherwise affirmed.

Landlord and lessees entered a three-year lease beginning on March 1, 1998. Lessees were to pay $600 in monthly rental for the premises they required to operate an Indian restaurant. Although the

---

[1]. All future statutory references are to RSMo    2000 unless otherwise indicated.

restaurant closed after six months' operation, the lessees continued to make the monthly rent payments through August, 1999. While doing so, however, the lessees contacted the landlord regarding an inspection of the premises by the city's building commissioner. The landlord consented to the inspection, believing that the lessees were taking in a partner. An inspection of the premises was completed in July, 1999, and a proposed sublessee was named the occupant on the occupancy permit. In August, 1999, the lessees tendered a sublease agreement to the landlord, requesting his consent. The landlord refused to sign the sublease agreement because the proposed sublessee was a corporation, which violated the landlord's policy against leasing his premises to corporate entities. The lessees then stopped making monthly rental payments in September, 1999, which prompted this lawsuit.

The trial court awarded the landlord $21,790 in damages.[2] More specifically, the landlord was awarded six months' unpaid rent totaling $3,600, an additional $14,485 in late charges, $3,600 in double rent, and attorney's fees of $1,305, less a refund of a $1,200 security deposit that was not returned to the lessees. The lessees appeal this judgment.

We must affirm the judgment in a court-tried case unless there is no substantial evidence to support, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In their first point on appeal, the lessees contend the trial court erred in construing the lease's late-payment clause to award the landlord $14,485. According to the

lessees, the late-payment provision is ambiguous, and therefore must be interpreted in their favor. We agree.

A contract provision is ambiguous when its terms are susceptible to more than one meaning, so that reasonable persons may fairly and honestly differ in the their construction of the terms. *Missouri Rental and Leasing, Inc. v. Walker,* 14 S.W.3d 638, 640 (Mo.App. E.D.2000). The test therefore is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonably average person. *Speedie Food Mart, Inc. v. Taylor,* 809 S.W.2d 126, 129 (Mo.App. E.D.1991). We construe ambiguous contractual language in the light most favorable to the party who did not draft it. *Parker v. Pulitzer Pub. Co.,* 882 S.W.2d 245 (Mo.App. E.D.1994).

The late-payment clause at issue states as follows:

> LESSEE agrees to and understands, that there will be a $5.00 per day late charge for each day rent payment or any part thereof is delinquent after the first day of the month for which the rent payment is due. Evidence of payment shall be either by post-mark or signed receipt.

The landlord claimed and the trial court agreed that the provision allows for the assessment of a $5 per day late charge as to each month's rent, from the date of delinquency to the date of trial. This interpretation resulted in the remarkable assessment of $14,485 in late charges on delinquent rent of $3,600. This is because the late fees are "stacked" as to each

---

2. We note that the trial court in its amended judgment made a mathematical error when calculating damages. The court awarded the landlord six months' rents at $600 per month, which totals $3,600, rather than the $3,660 amount set forth in the amended judgment.

A similar mathematical error was made with respect to the award of double rent, which also should have been entered in the amount of $3,600, and not $3,660. Therefore, the amended judgment should have totaled $21,790, rather than $21,910.

month's delinquency. Thus, when lessees were delinquent as to six months' rent, they were being assessed a late-payment charge of $30 per day, $5 per day as to each month's rent. However, the provision is also reasonably susceptible of meaning that there will be an assessment of a $5 per day late charge as to the total delinquent rent from the date of delinquency to the date of trial, resulting in the assessment of a late-payment charge of $2,795. Because we must construe ambiguous contract language in favor of the non-drafter, the lessees here, we find the trial court erred in its assessment of $14,485 in late-payment charges. Pursuant to Rule 84.14, we modify the late-payment award to $2,795.

In their second point on appeal, the lessees contend the trial court erred in awarding double rent to the landlord pursuant to section 534.347 because there was no evidence that the lessees allowed another to come into sole possession of the premises. We agree.

That section provides that in any action to recover rent, if it appears that a tenant allowed another person to come into sole possession of the premises without the landlord's permission, the court may award damages not to exceed twice the amount of rent due. According to the lessees, there was no evidence that anyone else was ever in sole possession of the premises. In fact, the lessees contend that the evidence clearly shows that the property was never again occupied after the lessees closed their restaurant.

■ Upon our review of the record, we agree with the lessees that the trial court erred in awarding double rent to the landlord. We find insufficient evidence that the lessees allowed the proposed sublessee to come into sole possession of the leased premises. Possession is defined as "the fact of having or holding property in one's power; the exercise of dominion over

property." BLACK'S LAW DICTIONARY 1183 (7th ed.1999). Because the acts complained of here merely anticipated later possession and do not constitute acts of sole dominion over the leased premises, we reverse the trial court's award of double rent to the landlord of $3,600.

In their final point, the lessees contend that the trial court erred in finding in favor of the landlord given that the landlord constructively evicted the lessees when he unreasonably refused to consent to the sublease. More specifically, the lessees argue that the landlord constructively evicted them when he failed to correct certain deficiencies found in an inspection of the premises and unreasonably refused to consent to the sublease. We disagree.

■ "A constructive eviction arises when the lessor, by wrongful conduct or by the omission of a duty placed upon him in the lease, substantially interferes with the lessee's beneficial enjoyment of the demised premises." *Wulff v. Washington,* 631 S.W.2d 109, 111 (Mo.App. W.D.1982), *quoting King v. Moorehead,* 495 S.W.2d 65, 70 (Mo.App. W.D.1973).

■ We cannot conclude that the landlord's refusal to consent to the lessee's sublease constituted wrongful conduct or an omission of a duty by the landlord. According to the terms of Article 11 of the lease, the lessees shall not sublease the premises without the prior written consent of the landlord and the landlord shall not unreasonably or arbitrarily withhold consent to a sublease. Here, the lessees failed to obtain from the landlord written consent prior to entering into the proposed sublease agreement. Nonetheless, the landlord entertained the proposed sublease agreement, with one modification. Under the original sublease agreement tendered to the landlord for his approval, the proposed sublessee was a named corporation, rather than an individual. Because it is the landlord's standard practice to have an

individual execute a lease on behalf of a corporate entity, the landlord countered with a proposal in conformity with his standard practice. The landlord's proposal was rejected. We do not find the landlord acted unreasonably or arbitrarily in refusing to consent to the proposed sublease that deviated from his standard business practice.

■ We further find that lessees' claim as of constructive eviction based upon the landlord's refusal to correct certain deficiencies to the leased premises is not preserved for appellate review based upon the lessees' failure to raise such claim in their point relied on. Rule 84.04(d). Thus, the trial court did not err in finding that the lessees were not constructively evicted from the leased premises.

The late-payment award is modified; the award for double rent is reversed; the modified judgment is otherwise affirmed.

SHERRI B. SULLIVAN, P.J., and LAWRENCE G. CRAHAN, J., concur.

